334 F.2d 262
 Laurie W. TOMLINSON, District Director of Internal Revenue for the District of Florida, Appellant,
v.
Sidney LEFKOWITZ and Rose Lefkowitz, Appellees.
Sidney LEFKOWITZ and Rose Lefkowitz, Appellants,
v.
Laurie W. TOMLINSON, District Director of Internal Revenue for the District of Florida, Appellee.
 No. 21094.
 United States Court of Appeals Fifth Circuit.
 July 13, 1964.
 
 Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Atty., Dept. of Justice, John B. Jones, Jr., Acting Asst. Atty. Gen., Washington, D. C., William A. Meadows, Jr., U. S. Atty., Miami, Fla., David O. Walter, Michael I. Smith, Attys., Dept. of Justice, Washington, D. C., for appellant.
 Bernard R. Fleisher, New York City, E. David Rosen, Claude L. Eichel, Miami, Fla., for appellees.
 Before TUTTLE, Chief Judge, BROWN, Circuit Judge, and BREWSTER, District Judge.
 TUTTLE, Chief Judge.
 
 
 1
 This case is before us on cross-appeals of taxpayers Sidney and Rose Lefkowitz and the District Director of Internal Revenue to the judgment of the trial court in taxpayers' refund suit. At issue are certain penalties assessed against taxpayers under the Internal Revenue Code of 1939, for civil fraud, § 293(b), for delinquent failure to file returns, § 291(a), for substantial underestimation of estimated taxes, § 294(d) (2), and for the interest thereon, covering the taxable years 1951-1953.
 
 
 2
 On March 14, 1958, taxpayers filed skeleton income tax returns for the years 1951, 1952, and 1953 showing only net income and tax. The taxpayers then filed original tax returns for the years in question showing details of income, deductions, credits, and exemptions April 29, 1958. The Government on December 4, 1959, made a further assessment for taxes due in the year 1951.[1] These amounts plus delinquency penalties and interest were paid by taxpayers and no claim for refund of them was made. However, additional penalties assessed by the District Director and paid by taxpayers are the subject of this refund suit. These penalties include $23,970.33 for fraud for the three years, $654.23 for underestimation in 1953, and additional delinquency penalties of $2,491.25 assessed on the ground that the delinquency penalty should be computed without regard to the estimated tax payments made by taxpayer prior to the due dates of his tax returns for the taxable years in issue. The district court held that all of the penalties were properly assessed and collected, except for the civil fraud penalties which should have been computed with regard to a credit given for the estimated tax payments made by taxpayers before the due date of the return.
 
 
 3
 The major issue raised on this appeal is whether the lower court correctly held that the criminal conviction of Sidney Lefkowitz for felonious evasion of income taxes in the years in question collaterally estopped taxpayers from seeking a refund of civil fraud penalties assessed for the same taxable years. Taxpayers complain first that the felonies for which the husband was convicted occurred before the wife signed the delinquent joint income tax returns; hence any fraud of the husband during that period should not be imputed to the wife. Secondly, taxpayers argue that the doctrine of collateral estoppel by judgment was improperly invoked since the necessary elements in a prosecution under Internal Revenue Code of 1939, § 145(b),[2] under which the husband was convicted, differ from those required to impose a fraud penalty under § 293(b).[3]
 
 
 4
 This Court made a thorough analysis of collateral estoppel in Hyman v. Regenstein, 258 F.2d 502, 509-11 (5th Cir. 1958), cert. denied, 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575 (1959). The general principle was stated to be that "a fact decided in an earlier suit is conclusively established between their parties and their privies, provided it was necessary to the result in the first suit." Id. at 510 of 258 F.2d. In setting the limits of its application, the Court observed, in reliance upon Restatement, Judgments § 68(o), (p), that only facts essential to the judgment, as opposed to the evidentiary facts on which the facts in issue depend, are subject to collateral estoppel. See id. at 510-11. Once the issue is actually determined, however, it cannot be relitigated between the parties even in a suit on a different cause of action. See United States v. Burch, 294 F.2d 1, 5 and n. 4 (5th Cir. 1961). Moreover, an issue resolved in favor of the United States in a criminal prosecution may not be contested by the same defendants in a civil suit brought by the Government. Local 167, Int'l Bhd. of Teamsters, etc. v. United States, 291 U.S. 293, 54 S.Ct. 396, 78 L.Ed. 804 (1934); see Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 568-69, 71 S.Ct. 408, 95 L.Ed. 534 (1951). The converse is not true, however; the Government is not estopped to raise in a civil proceeding an issue on which it lost in a criminal case because the burden of proof beyond a reasonable doubt is greater than in a civil case. Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938); see United States v. Burch, supra at 3 of 294 F.2d. Since, in the case at bar, the issue on which collateral estoppel was invoked was one on which the Government succeeded, there can be no objection that the former case was a criminal one whereas this one is civil.
 
 
 5
 We thus come to the critical question whether a criminal conviction for willfully attempting to evade a tax necessarily carries with it a determination that the resulting deficiency was due to fraud with intent to evade the tax. Taxpayers argue that it does not, primarily on the basis of two Tax Court decisions, Meyer J. Safra, 30 T.C. 1026 (1958), and Eugene Vassallo, 23 T.C. 656 (1955). In both of these cases the Tax Court found that a criminal conviction for willfully attempting to evade did not work an estoppel on the issue of fraud in a suit on the civil penalty; this conclusion was reached because of certain language in Helvering v. Mitchell, supra at 404-05 and n. 14 of 303 U.S., 58 S.Ct. 630. We do not believe that the Supreme Court's language in that case justifies such an interpretation. As indicated above, the Court held that there could be no estoppel on the question of fraud in a civil case resulting from an acquittal in a criminal case because of the different standards of proof involved. The Government had also objected that estoppel was inapplicable because of the difference in the issues presented, but the Court expressly stated, "Since there was not even an adjudication that Mitchell did not willfully attempt to evade or defeat the tax, it is not necessary to decide whether such an adjudication would be decisive also of this issue of fraud." Id. at 398, 58 S.Ct. at 632. The language on which the Tax Court relied and which taxpayers here claim is decisive is found in a discussion of double jeopardy in which the Court concluded that the 50% fraud penalty is actually a civil sanction and, therefore, Mitchell was not put in double jeopardy. In a footnote, id. at 404 n. 14, 58 S.Ct. 630, the Court quotes language from the Board of Tax Appeals in the same case, to the effect that the civil and criminal sections are basically different in character and contain widely differing language which may require entirely dissimilar proof, to aid in distinguishing the nature of the two sections. We do not think this constitutes a recognition by the Supreme Court that a finding of fraud is not necessary to convict under section 145(b), Likewise, the case of United States v. Scharton, 285 U.S. 518, 52 S.Ct. 416, 76 L.Ed. 917 (1932), which held that a proviso extending to six years the statute of limitations on tax cases where fraud was involved did not apply to a willful attempt to evade a tax, does not control the question before us because the Court noted that required narrow construction of the proviso limited it to offenses where fraud was defined as an ingredient in the statute. See id. at 521-22, 52 S.Ct. 416.
 
 
 6
 We conclude that the term "willfully," as used in section 145(b), must necessarily include the elements of "fraud," as used in section 293(b). The term "willfully" as it is used in the criminal statute is "a specific intent involving the bad purpose and evil motive to evade or defeat the payment of * * * income tax." Bloch v. United States, 221 F.2d 786, 788 (9th Cir. 1955); see Wardlaw v. United States, 203 F.2d 884, 885 (5th Cir. 1953). On the other hand, the fraud necessary for the imposition of the 50% penalty is a specific purpose to avoid a tax known to be owing. See Powell v. Granquist, 252 F.2d 56, 60 (9th Cir. 1958). Or, as this Court has said, there must be "actual and intentional wrong-doing on the part of the [taxpayer] * * with a specific intent to evade the tax." Eagle v. Commissioner, 242 F.2d 635, 637 (5th Cir. 1957); see Mitchell v. Commissioner, 118 F.2d 308, 310 (5th Cir. 1941). From examining the components of the two it can readily be seen that "willful" includes all the elements of "fraud." The difference, if any, is in the greater degree of bad motive or evil purpose required under the criminal provision; both require a wrongful intent to deprive the Government of taxes owing it.
 
 
 7
 Other courts, in another context, have also found fraud to be present in the willful attempt to evade taxes described in section 145(b). In deportation cases, the Supreme Court has established that fraud is the ingredient which makes a crime one involving moral turpitude as the term is used in the immigration laws. See Jordan v. DeGeorge, 341 U.S. 223, 227-29, 71 S.Ct. 703, 95 L.Ed. 886 (1951). Applying this test the Ninth Circuit has held that a conviction under section 145(b) for willfully attempting to evade taxes was one involving fraud, and hence an alien convicted under 145(b) could be deported. Tseung Chu v. Cornell, 247 F.2d 929 (9th Cir. 1957). In addition, a district court in a similar situation has said:
 
 
 8
 "[T]he Courts have, with apparent unanimity, held that in order for a conviction under § 145(b) to stand, the Government is required to prove that the evading taxpayer had a specific intent to evade taxation, amounting to an intent to defraud the United States. Fraud is so inextricably woven into the term, `wilfully' as is employed in § 145(b), that it is clearly an ingredient of the offense proscribed by that section. Only by creating unwarranted semantic distinctions could a contrary conclusion be reached."
 
 
 9
 Chanan Din Khan v. Barber, 147 F.Supp. 771, 775 (N.D.Cal.1957), aff'd, 253 F.2d 547 (9th Cir.), cert. denied, 357 U.S. 920, 78 S.Ct. 1361, 2 L.Ed.2d 1364 (1958). We therefore find that the issue of the existence of a fraudulent intent is foreclosed by collateral estoppel arising from Sidney's conviction under section 145(b). Since it is not challenged that deficiencies existed for the years 1951-1953, we hold that imposition of the section 293(b) fraud penalties is proper.
 
 
 10
 Mrs. Lefkowitz contends here for the first time in this litigation that she is somehow in a better position than is her husband with respect to her right to recover the fraud penalties assessed against the couple. This contention is based on the theory that since there is no proof that Mrs. Lefkowitz participated in the fraud of which her husband was found guilty in the criminal case, the right to recover for the fraud penalty would be available to her. There is no merit in this contention. In the first place, this contention was not made in the trial court. The parties agreed by stipulation at a pretrial conference what issues of fact and law were to be decided by the trial court. This point was not included in those issues remaining open for consideration. Thus the appellant should not be permitted to raise the issue here for the first time. Moreover, we conclude that if the issue had been raised there would be no merit in the contention. Here there was a fraud penalty paid by the taxpayers on account of a proven violation of the civil fraud penalty section of the Code, § 293 (b). The wife has made no effort to show that the payment of the fraud penalties was made with her funds as distinguished from those of her husband. In a suit for refund she can not be permitted to recover payments which she has neither alleged nor proved that she has made.
 
 
 11
 There are three remaining issues touching on the method of applying the several penalty provisions of the 1939 Code. The first of these deals with determining the "deficiency" as to which the 50% penalty is to be applied. The taxpayer here filed estimates accompanied by payments during the years 1951, 1952, and 1953. However, they made no timely return for any one of those three years. While the payments made with the declaration and estimate were fairly substantial they were much less than the amount of taxes finally assessed for the three years involved. The taxpayers here contend that the "deficiency" as to which the 50% penalty is to be applied, must be reduced by the amount of taxes actually paid with the declaration and estimate for each of three years, whereas the District Director contends that the deficiency is to be computed upon the entire amount of the tax ultimately found to be due for each of the three years because no return was filed for any of the three years until 1958. The trial court decided this issue with the taxpayer. It appears to us that the provisions of the statute relating to the civil fraud penalty require us to reverse this conclusion. Taxpayers do not in their briefs filed in this Court give any support to the trial court's determination in this respect. Section 271 of the 1939 Code provides in essential part:
 
 
 12
 "(a) In General. As used in this chapter in respect of a tax imposed by this chapter, `deficiency' means the amount by which the tax imposed by this chapter exceeds the excess of —
 
 
 13
 "(1) the sum of (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, * * *."
 
 
 14
 It is undisputed that here no amount was "shown as the tax by the taxpayer upon his return" because he filed no return, although he did file a declaration and estimate of the tax for each of the three years involved. It is clear from other provisions of the Code that the law distinguishes between the tax return and the declaration and estimate of the tax. Thus, the definitional terms of the statute seem to preclude the granting of the relief which the trial court afforded the taxpayers in crediting the amount shown upon the declaration and estimate as a reduction of the deficiencies for the three years involved.
 
 
 15
 The second of the penalty section, section 291(a), the penalty for the delinquent failure to file a tax return when due was, we conclude, correctly construed by the trial court. We agree that, as held by the Tax Court in West Virginia Steel Corp. v. Commissioner, 34 T.C. 851, the delinquency penalty must be computed not on the net amount due by reason of payments made on the declaration, but on the entire tax where there is a failure to file a timely income tax return. We think it clear that the provisions now contained in the section 6851 (b) of the Internal Revenue Code of 1954 marked a change in this requirement.
 
 
 16
 We also affirm the action of the trial court with respect to the third challenged penalty. The issue here arises because the District Director assessed a delinquency penalty both for failing to file an estimate for the year 1953, and for thereafter filing an estimate which was a substantial under-estimation of the tax. The cases clearly authorize this treatment. See Bryan v. Commissioner, 281 F.2d 238, (4th Cir. 1960). Stellor v. United States (Ct.Claims 1961), 287 F.2d 588.
 
 
 17
 The judgment is modified to the extent that it allowed a recovery by the taxpayers of the sum of $4,982.52, plus interest, by reason of the credits allowed against the deficiencies for the years 1951, 1952, and 1953 in computing the fraud penalty. In all other respects the judgment of the trial court is affirmed. The case is remanded to the trial court for the entry of a proper judgment in accordance with this opinion.
 
 
 
 Notes:
 
 
 [1]
 The foregoing amounts, along with the declaration and payments made on or near the years in question, are shown in the following table:
 Taxable Date Filed Amount 3/14/58 4/14/58 Additional
 Year and Paid Skeleton Return Assessment
 Return
 1951 3/15/51 $1,000.00 $ 6,869.28 $11,318.44 $6,632.92
 1952 3/15/52 3,615.05 13,623.58 13,772.16
 1953 1/29/54 5,350.00 15,981.41 17,412.52
 
 
 [2]
 "Failure to Collect and Pay Over Tax, or Attempt to Defeat or Evade Tax. Any person required under this chapter to collect, account for, and pay over any tax imposed by this chapter, who willfully fails to collect or truthfully account for and pay over such tax, and any person who willfully attempts in any manner to evade or defeat only tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."
 
 
 [3]
 "Fraud. If any part or any deficiency is due to fraud with intent to evade tax, then 50 per centum of the total amount of the deficiency (in addition to such deficiency) shall be so assessed, collected, and paid, in lieu of the 50 per centum addition to the tax provided in section 3612 (d) (2)."