CARL A. PURVIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Purvis v. Commissioner
Docket No. 16433-81.
United States Tax Court
T.C. Memo 1983-376; 1983 Tax Ct. Memo LEXIS 414; 46 T.C.M. (CCH) 593; T.C.M. (RIA) 83376; June 23, 1983. C. Geoffrey *415 Vining and Ronald T. Murphy, for the petitioner. Max K. Boyer, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $17,572 in petitioner's Federal income tax for 1977 and an addition to tax under section 6653(a) [1] in the amount of $888. The only questions for decision are: 1. Whether petitioner realized income in 1977 from the theft and sale of marijuana and, if so, in what amount; and 2. Whether any part of any underpayment by petitioner is due to negligence or intentional disregard of rules and regulations. FINDINGS OF FACT Petitioner and his wife filed a joint Federal income tax return for 1977 with the Internal Revenue Service Center, Atlanta, Georgia. At the time his petition in this case was filed, petitioner resided in Tampa, Florida. Petitioner was employed by the Sheriff's Department of Polk County, Florida, from March 1975 until March 1977. From approximately March 1976 until March 1977, petitioner *416 was assigned to the department's Special Investigation Division. That division investigates offenses involving narcotics, prostitution, gambling, and illegal alcohol, and apprehends individuals suspected of committing such offenses within Polk County, Florida. In the course of his duties, petitioner "worked undercover and * * * acted as a buyer, as a street dealer in heroin, pot, coke." In May 1976, petitioner and another member of the Special Investigation Division, James R. Prescott, Jr. (Prescott), apprehended Austin Davis (Davis), who was in possession of 41 pounds of Mexican marijuana (the Davis marijuana or the Mexican marijuana). In February 1976, Prescott and several other officers of the Sheriff's Department, not including petitioner, arrested Joseph Salomone (Salomone) and James Bender (Bender) in possession of 13 bales, or 650 pounds, of Colombian marijuana (the Salomone/Bender marijuana or the Colombian marijuana). The Davis marijuana and the Salomone/Bender marijuana were stored in the evidence locker of the Sheriff's Department from the arrest until the trial in each case. While the marijuana was kept by the Sheriff's Department, its storage was Prescott's responsibility. *417 Only he and one superior officer had a set of keys to the evidence locker. Salomone was tried on June 22, 1976, and Davis was tried on November 18, 1976. At the time of each trial, the marijuana involved in the case was turned over to the Clerk of the Circuit Court, Polk County, Florida, for safekeeping. On January 14, 1977, petitioner, Prescott, and Eddie Olin Roberts (Roberts) broke into the office of the Clerk of the Circuit Court and stole the Davis marijuana and the Salomone/Bender marijuana. Roberts was the former husband of petitioner's sister and had formerly worked for petitioner in a cattle trucking business. Roberts was experienced in dealing with marijuana, [2] and had served petitioner as an informer while petitioner worked for the Sheriff's Department. In the months following the courthouse burglary, Roberts sold the majority of the marijuana that he, petitioner, and Prescott had stolen. The remainder was sold by petitioner and Prescott themselves or by others. Because the marijuana had become dry and brittle, some of it so much so that it was unsaleable in that condition, *418 Roberts "steamed" the marijuana before selling it. [3] Through the steaming process the marijuana was fluffed up and its appearance largely restored, but some of its weight was lost. The record does not show precisely how much weight the marijuana lost as a result of the steaming process, but expert testimony shows that steaming generally resulted in a weight loss of about 20 percent. Roberts sold the marijuana in plastic bags containing one pound each. The amount of the total proceeds he received from selling the marijuana is not shown clearly by the record, but he received about $125 per pound for the Mexican marijuana and prices ranging from $275 to $300 per pound for the Colombian marijuana. Colombian marijuana of good quality could be sold for $300 to $350 per pound in the general area during the period in question, but some of the marijuana in question "wasn't that great." Roberts gave petitioner one-third of the proceeds of the sale of marijuana. On September 29, 1977, an information was returned against petitioner and Prescott charging them with, among other things, the theft of the *419 marijuana. Petitioner's and Prescott's trial was held in the Circuit Court of Florida's Tenth Judicial Circuit from February 21, 1978 through February 28, 1978. They were convicted of burglary, grand larceny, possession of more than 5 grams of marijuana, and possession of more than a hundred pounds of marijuana with intent to sell. [4] Petitioner received three consecutive 5-year sentences and one 15-year sentence to run concurrently with the other three sentences. Petitioner and Prescott appealed to the District Court of Appeal for Florida's Second District, and the appeals court held that the charge of possession constituted a lesser offense included in petitioner's and Prescott's offense of possession with intent to sell. Accordingly, their conviction for possession of the 5 grams was vacated; their conviction and sentence were otherwise affirmed ( Purvis v. State of Florida,370 So.2d 32 (Fla. Ct. App. 1979)). At no time was any marijuana seized from the physical possession of petitioner. Respondent determined that *420 petitioner realized income in the amount of $66,667 from the sale of marijuana in 1977, computed as follows: Average
Proceeds
Type
Weight
Sales Price
for 1977
Colombian marijuana
650 lbs.
$300 per lb.
$195,000
Mexican marijuana
40 lbs $125 per lb.
5,000
$200,000
Petitioner's share
1/3
Unreported income
$ 66,667
Respondent also determined that part of petitioner's underpayment for 1977 was due to negligence or intentional disregard of rules and regulations. Accordingly, respondent imposed the 5-percent addition to tax provided for in section 6653(a). OPINION Section 61(a) defines the term "gross income" to include "income from whatever source derived." This statutory language has been held to encompass "accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." Commissioner v. Glenshaw Glass,348 U.S. 426, 431 (1955). Illegal gains as well as legal gains thus constitute gross income. Sec. 1.61-14(a), Income Tax Regs.,; see James v. United States,366 U.S. 213, 219 (1961); Rutkin v. United States,343 U.S. 130, 137 (1952). Relying *421 on these principles, respondent has determined that petitioner realized taxable income from the theft and sale of marijuana. Arguing that the proposed assessment is arbitrary, that respondent, therefore, has the burden of proof, and citing Llorente v. Commissioner,649 F.2d 152 (2d Cir. 1981), revg. 74 T.C. 260 (1980) and Weimerskirch v. Commissioner,596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977), petitioner summarizes his argument as follows: The Petitioner * * * [argues] that the evidence submitted in this case supports his contention that the government's assessment is arbitrary and not supported by the evidence. * * * The Petitioner, although convicted of burglary, larceny, and possession, maintained his noninvolvement in the burglary throughout the state court criminal trial. The Petitioner was convicted on purely circumstantial evidence, and the key witness * * * was a * * * twice-convicted felon, namely, Eddie Olin Roberts, who was granted prosecutorial immunity. Thus, the Petitioner cannot prove facts involving the actual dispositin of the marijuana because the person or persons who arranged for the *422 theft, transportation, storage, and selling of the marijuana are unknown to the Petitioner. Petitioner's reliance on the Weimerskirch and Llorente line of cases, as support for the argument that the notice of deficiency is arbitrary, is misplaced. In those cases, the Commissioner determined that the taxpayers there involved had taxable income from the sale of narcotics, but the evidence did not link the taxpayers to the alleged income-producing activity. Because the courts of appeals in those cases concluded that the evidence did not provide the necessary evidentiary linkage, the proposed assessments failed. In Carson v. United States,560 F.2d 693, 698 (5th Cir. 1977), cited in Weimerskirch, the court of appeals, finding a wagering tax assessment to be without legal foundation for part of the period involved in the case, stated the essence of the Weimerskirch-Llorente rule as follows: We work no change in the burden or order of proof in wagering excise tax cases. We simply recognize that, at the close of all the evidence, if the record contains no item of proof tending to show that the taxpayer was engaged in wagering activity during the period *423 assessed, the Commissioner's determination cannot prevail. The record before us contains no such predicate. * * * The record in the instant case suffers from no such infirmity. Due to the judgment of the Florida courts, petitioner is collaterally estopped to deny that he and Prescott stole the marijuana with intent to sell it. The rule of collateral estoppel and the policy underlying it were stated by the Supreme Court in Allen v. McCurry,449 U.S. 90, 94 (1980), as follows: Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. Montana v. United States,440 U.S. 147, 153. As this Court and other courts have often recognized, res judicata and collateral estoppel relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication. Id., at 153-154. [Fn. ref. omitted.] It has long been recognized that estoppel in a civil case may be based on a judgment *424 in a prior criminal case. Tomlinson v. Lefkowitz,334 F.2d 262, 264 (5th Cir. 1964); Amos v. Commissioner,43 T.C. 50 (1964), affd. 360 F.2d 358 (4th Cir. 1965); Arctic Ice Cream Co. v. Commissioner,43 T.C. 68 (1964); cf. Monjar v. Commissioner,13 T.C. 587, 614, 617 (1949). It is also well established that collateral estoppel based on the judgment of a State court may be invoked in a Federal court. Allen v. McCurry,supra at 95; see Montana v. United States,440 U.S. 147 (1979). Furthermore, it is no bar to the application of collateral estoppel in the present case that respondent was not a party to petitioner's conviction in the Florida court. The Supreme Court has eliminated the requirement of mutuality in applying collateral estoppel. Allen v. McCurry,supra at 94; Parklane Hosiery Co v. Shore,439 U.S. 322, 331 (1979); see Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,402 U.S. 313, 333-334, 350 (1971). The Supreme Court has also recognized that collateral estoppel cannot apply *425 with respect to any issue which the party against whom an earlier decision is asserted did not have a "full and fair opportunity" to litigate in the earlier case. [5] Nothing in the record in this case, however, suggests that petitioner did not have the opportunity fully and fairly to litigate in the Florida courts the question of his participation in the theft. Petitioner has made no such contention.Accordingly, we hold that collateral estoppel applies to bar petitioner from denying his involvement in the theft of the marijuana. [6]
The judgment in a prior action, however, operates as an estoppel only as to those matters in issue or points controverted upon the determination of which the finding or verdict was rendered. Commissioner v. Sunnen,333 U.S. 591, 598 (1948); Allen v. McCurry,supra at 94; Montana v. United Statessupra at 153. In Purvis v. State of Florida,370 So.2d 32 (Fla. Ct. App. 1979), *426 the appellate court stated that, in the trial court, petitioner and Prescott were "convicted of (1) burglary, (2) grand larceny, (3) possession of more than five grams of marijuana, and (4) possession of more than a hundred pounds of marijuana with intent to sell." The appellate court modified the trial court's judgment because the State was required to establish that petitioner and Prescott possessed more than 5 grams of marijuana in order to show that they possessed over 100 pounds with intent to sell it. The 5-gram charge was thus a lesser-included offense, and a defendant cannot be sentenced for a lesser-included offense as well as the greater offense. The court otherwise affirmed the convictions. The facts necessary to the judgment convicting petitioner on the charges sustained by the appellate court were: (1) That on January 14, 1977, he and Prescott entered in the Circuit Court Clerk's office with the intent to commit burglary in violation of Fla. Stat. Ann. sec. 810.02 (1976); (2) that on that date they unlawfully took, stole, or carried away marijuana of which they were not the owners, in violation of Fla. Stat. Ann. sec. 812.021 (1976); and (3) *427 that on the same date they possessed in excess of 100 pounds of marijuana with intent to sell it, in violation of Fla. Stat. Ann. sec. 893.13 (1976). These facts are judicially established, and they amply show petitioner's linkage to the income-producing activity required by the Weimerskirch-Llorente rule. [7]
Our holding that the foregoing facts have been judicially established does not, however, dispose of the case. The Florida court, while it found that petitioner stole the marijuana and possessed it *428 with the intent to sell it, did not determine the precise amount stolen (only that petitioner and his confederates possessed with intent to sell more than 100 pounds) or sold, or the marijuana's value, or the amount realized by petitioner on its sale. Those matters were not necessary to the proof of petitioner's culpability for the crimes of which he was convicted, but they are basic to our determination of his income tax liability. As set forth in our Findings of Fact, respondent has determined that the Colombian marijuana was sold for $195,000 (650 pounds at an average price of $300 per pound) and that the Mexican marijuana was sold for $5,000 (40 pounds at an average price of $125 per pound). Of the total sales proceeds of $200,000 so determined, respondent has further determined that petitioner's share was one third, or $66,667. [8] The burden is on petitioner to prove that he realized any lesser amount. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). *429 As we view the evidence, it shows that, due to the weight loss undergone by the marijuana in the steaming process, fewer pounds were sold than were stolen. The evidence also shows that the average price realized for the Colombian marijuana was less than that determined by respondent. Using our best judgment on the basis of the record before us, we conclude that 520 pounds of Colombian marijuana were sold at an average price of $290 per pound (for a total of $150,800), and that 32 pounds of Mexican marijuana were sold at an average price of $125 per pound (for a total of $4,000). Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930). In addition, we find that petitioner has failed to disprove respondent's determination that he had a one-third share in the marijuana or its proceeds. Therefore, we find that the total proceeds of the sale were $154,800, and petitioner's one-third share was $51,600. We hold that petitioner realized income in that amount. [9]
*430 Petitioner cites Forster v. Commissioner,T.C. Memo. 1961-281, and Rotello v. Commissioner,T.C. Memo. 1970-213. Forster involved a check-kiting scheme. The Court held that funds which were-- only temporarily within petitioner's possession as part of the check-kiting circle, do not represent income to him, and the situation is to be sharply distinguished from the one where the wrongdoer is actually enriched by illegally obtained funds. Cf. James v. United States,366 U.S. 213. In Rotello, respondent determined that checks drawn on the account of the taxpayer's employer represented income to him, but the Court found that the taxpayer had not retained the funds for his personal use. He had spent them, instead, for his employer's benefit. Petitioner does not argue, however, that the marijuana or the proceeds of its sale were "only temporarily" in his possession, or that the receipt of the marijuana is made nontaxable because of the manner in which he disposed of it, nor would the record support such contentions. Petitioner argues, instead, that he never received the marijuana in the first place. Forster and *431 Rotello are, therefore, inapposite. Respondent has also imposed a 5-percent addition to tax under section 6653(a), [10] based on his conclusion that petitioner's failure to report the income that he realized from the theft and sale of marijuana was due to negligence or intentional disregard of rules and regulations. Petitioner has not proved that respondent's determination was erroneous. Accordingly, we sustain respondent's determination as to this issue. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.↩
2. Roberts had been convicted in Oklahoma in 1976 on a marijuana-related charge.↩
3. This process involved holding the marijuana on a screen above boiling water.↩
4. Roberts was not charged with the burglary. He was granted immunity in return for his testimony in the case against petitioner and Prescott.↩
5. Allen v. McCurry,449 U.S. 90, 95↩ (1980), and cases cited therein. 6. See Keogh v. Commissioner,T.C. Memo. 1975-197↩, where a taxpayer's criminal conviction was held to estop him from denying that he had received the funds there in question.
7. Wholly apart from collateral estoppel, the evidence offered at the trial inextricably links petitioner to the theft and sale of the marijuana. The parties stipulated most, if not all, of the testimony taken in the State trial court where petitioner was convicted. In addition, respondent introduced the testimony of Eddie Olin Roberts who testified that he participated with petitioner in the theft and sold most of the stolen marijuana, dividing the proceeds with petitioner and Prescott. That Roberts had previously been convicted of felonies did not render his testimony incompetent even though his convictions have a bearing on his credibility.↩
8. Respondent's determination, as stated in the notice of deficiency, was apparently based on the theory that petitioner realized income only when the marijuana was sold.On brief, respondent has argued that petitioner realized income "to the extent of the fair market value of the marijuana that he stole," apparently on the theory that petitioner realized income at the time of the theft, measured by the value of the property stolen. This latter theory finds support in sec. 1.446-1(c)(1)(i), Income Taxes Regs., which provides that-- under the cash receipts and disbgursements method in the computation of taxable income, all items which constitute gross income (whether in the form of cash, property, or servicese are to be included for the taxable year in which actually or constructively received. [Emphasis added.] Under this latter theory, a thief might realize additional gain or loss when the stolen property was sold, measured by the difference between the proceeds of the sale and the fair market value of the property at the time it was stolen. Cf. Brunskill v. Commissioner,T.C. Memo. 1982-645↩, n. 2, on appeal (5th Cir., Feb. 16, 1983). We need not rule on the matter of precisely when income was realized in order to decide this case, however, because petitioner stole and sold the marijuana in the same taxable year. Its value is reflected by its sales proceeds. Accordingly, the net amount of income realized will be the same under either theory.
9. In support of his contention that he did not realize the income determined by respondent to have been unreported, petitioner introduced into evidence a "Comparison of Receipts and Expenditures" for the years 1977--1981 in which the deposits to his bank accounts and the "personal living expenditures" paid for by check are presented. Petitioner argues that the bank accounts reflect no large deposits such as one would expect if he had, in fact, realized $66,667, as respondent determined. Petitioner also argues that the presentation of his living expenses and other evidence establish that his standard of living was not appreciably higher during or after the period in which he was determined to have realized the $66,667 than it had been before. This evidence is unpersuasive. Petitioner need not have deposited the proceeds of the sale of marijuana in the bank in order to have realized income, nor need he have spent the money for living expenses, or spent it at all.↩
10. As in effect for 1977, sec. 6653(a) provided as follows: (a) Negligence or Intentional Disregard of Rules and Regulations with Respect to Income or Gift Taxes.-- If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩