VIRGIL M. MARTIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Martin v. Commissioner
Docket No. 1735-82.
United States Tax Court
T.C. Memo 1985-43; 1985 Tax Ct. Memo LEXIS 590; 49 T.C.M. (CCH) 607; T.C.M. (RIA) 85043; January 28, 1985
*590 Held, unreported income from sole proprietorship determined and additions to tax for fraud sustained. Virgil M. Martin, pro se. Sergio Garcia-Pages, for respondent. WHITAKER
*1 MEMORANDUM OF FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined deficiencies and additions to tax against petitioner for the years and in the amounts as follows: *591 *2 Additions to Tax
Year
Tax
under Sec. 6653(b) [1]
1975
$32,262.70
$16,131.35
1976
29,694.63
14,847.32
1977
31,552.83
15,776.42
1978
33,168.95
16,584.48
The issues before the Court for each of the years are the determination of the net income realized by petitioner from his sole proprietorship and whether or not he is liable for the addition to tax for fraud under section 6653(b). For convenience our findings of fact and opinion are combined. Certain of the facts have been stipulated and to that extent are so found. During the years in issue and on the date of filing of the petition in this case, petitioner was a resident of Cocoa Beach, Florida. During the years in issue, petitioner as a sole proprietor, operated a hardware business under the name of "Brevard Hardware and Paint," located at 1345 West King Street, Cocoa Beach, Florida. [2] The premises were rented from a third party with petitioner being obligated to pay for all utilities *592 except water. Prior to the year 1975, petitioner regularly filed Federal income tax returns, reporting thereon the result of operation of this sole proprietorship as well as another similar *3 business during part of this time period. He also filed other state and Federal tax returns, including sales tax returns required under the laws of the State of Florida. Commencing with the calendar year 1975 and continuing at least through the calendar year 1979, petitioner ceased filing proper Federal income tax returns but instead filed (several years after their due dates) protest-type documents purporting to be returns containing no information from which his Federal income tax liability could be determined. Petitioner filed no return for 1980 or 1981. In three of the "returns" for the years at issue, [3] he transposed digits of his social security number in an apparent effort to hinder audit. Attached to all of his purported *593 returns for the years at issue were typical protest-type statements asserting fifth amendment rights and that an individual is not required to disclose to the Federal Government facts with respect to this business and similar claims. However, during the same period, petitioner continued to file quarterly Federal withholding tax returns on Forms 941 and yearly returns on Forms 940 with respect to his employees, provided his employees with Forms W-2 and filed sales and use tax reports with the Department of Revenue for the State of Florida. In due course, petitioner was solicited for proper Federal income tax returns. When they were not forthcoming, his books and records were requested but throughout the audit petitioner *4 consistently refused to disclose any facts or to make his books and records available. He also did what he could to delay and interfere with efforts by respondent's agents to secure relevant information from third parties. It is also apparent that petitioner gradually shifted to doing business in cash to the *594 extent possible. Respondent issued a report of examination dated January 29, 1981 on Form 950(DO) (Rev. 10-78)--the standard "30-day letter"--which as to gross receipts was based on the sales tax returns filed by petitioner with the State of Florida. In addition to deficiencies, the addition to tax for fraud was proposed. The statutory notice was issued on November 6, 1981. The determinations therein as to gross receipts are identical to those used in the 30-day letter. However, the 30-day letter computed the cost of goods sold by determining the average gross profit percentage from petitioner's tax returns for the years 1972, 1973 and 1974 and applying that percentage (28.85 percent) to the gross receipts so determined for the years in issue. No deductions for expenses such as rent, wages, utilities and the like were allowed in the 30-day letter although apparently respondent had some third party records which reflected certain expenses. The statutory notice, on the other hand, allowed no deductions for cost of goods sold or for other expenses on the grounds that petitioner had declined to provide any records. *5 Since filing his petition with this Court and during *595 the pre-trial phase, the trial itself and subsequent to the trial, petitioner has continued his "protester" attitude in his dealings with this Court and with respondent's counsel. Almost all of petitioner's arguments have been frivolous and have served no purpose except to waste our time and resources and those of respondent and its counsel. Petitioner's numerous pointless motions have of course contributed to that result. His attitude has required the Court's attention on a number of occasions in the course of our continuing efforts to obtain facts having a bearing on petitioner's inventory and other costs properly attributable to his business during the years in issue. The only appropriate issue which petitioner raised both in preliminary proceedings and during the trial is that he incurred costs for inventory and for the operation of his business and was entitled to reduce his gross receipts as determined by respondent by amounts for such items. Petitioner has not yet produced any books and records, or satisfactorily explained their absence, although he obviously maintained books and records at one time. Without such books and records, petitioner could not have filed tax *596 returns for prior years or continued to file sales tax returns and Federal withholding tax returns. We are convinced, however, that starting with his protest period, petitioner consciously maintained few records and destroyed or concealed those which he had. To the extent feasible, he increasingly did business in *6 cash and paid expenses in cash in order to try to thwart respondent's audit efforts. Thus, although petitioner has complained that the statutory notice was arbitrary in failing to estimate petitioner's cost of goods sold, as was done in the 30-day letter, petitioner declined to furnish respondent prior to the issuance of the statutory notice any information to explain why the profit percentage based on prior years when petitioner was operating two stores should be applicable to the years in issue when petitioner was operating only a single store. [4]
*597 During the course of three separate hearings and a transcript of 165 pages, the gross receipts determined by respondent were deemed admitted and petitioner has not seriously questioned the correctness of those figures. During the somewhat brief periods when we were able to persuade petitioner, testifying under oath, to focus on relevant issues, we found petitioner to be a reliable witness as to his business, and we *7 accept petitioner's testimony that during the years 1975 through 1978 his profit margin (as defined by petitioner) was in the range of 30 to 33 1/3 percent. Applying the rule of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), "bearing heavily * * * upon the taxpayer whose inexactitude is of his own making," and basing our finding upon the entire record, we find that the average inventory cost for each of these years for petitioner's hardware business is equal to 66 2/3 percent of the gross receipts (as determined by respondent) for each of the years, and that under these circumstances use of average cost is reasonable. We further accept petitioner's testimony that he incurred business expenses for office supplies for each of these years *598 in the amount of 1/2 of 1 percent of such gross receipts and that in the years 1977 and 1978 petitioner contributed to a fund under the control of an employee, one Frank Aiken, as additional compensation not less than the sum of $450 per year. Taking all of these adjustments into account, we find that petitioner's net profit from his hardware store proprietorship during these years is as reflected in the following table: *8 Cost of Goods Sold
Gross
(66 2/3% of Gross
Business
Year
Receipts
Receipts
Expenses [5]
Net Profit
1975
$68,232.50
$45,488.56
$22,370.15
$373.79
1976
64,306.14
42,870.97
19,963.98
1,471.19
1977
69,261.46
46,174.54
[6] 17,020.48
6,066.44
1978
71,583.20
47,722.37
[6] 16,395,39
7,465.44
The final issue which we must decide is whether or not respondent's determination of additions to tax under section 6653(b) is to be sustained. [7] Respondent has the burden of proving by clear and convincing evidence that petitioner is liable for the addition to tax under *599 section 6653(b). Section 7454(a); Rule 142(b). The fraud addition to tax is designed as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from taxpayer's fraud. Helvering v. Mitchell,303 U.S. 391, 401 (1938). The existence of fraud is a fact which must be determined on the basis of all facts and circumstances. Estate of Pittard v. Commissioner,69 T.C. 391 (1977). Fraud means "actual, intentional wrongdoing, and the intent required is the *9 specific purpose to evade a tax believed to be owing." Mitchell v. Commissioner,118 F.2d 308, 310 (5th Cir. 1941). Fraud is not to be imputed or presumed, Otsuki v. Commissioner,53 T.C. 96, 112 (1969), and the mere failure to report income is not sufficient to establish fraud. Merritt v. Commissioner,301 F.2d 484, 487, (5th Cir. 1962), affg. a Memorandum Opinion of this Court; Otsuki v. Commissioner,supra.The taxpayer's entire course of conduct may be examined. Stone v. Commissioner,56 T.C. 213, 224 (1971). Fraud is *600 defined as: A false representation of a matter of fact, whether by words or by conduct, by false or misleading allegations, or by concealment of that which should have been disclosed, which deceives and is intended to deceive another so that he shall act upon it to his legal injury. [Black's Law Dictionary, p. 594 (rev. 5th ed. 1979).] In this case, the principal indicia of fraud are the failur to file proper returns and to pay tax for the 4-year period, the failure even to file returns for subsequent years, the failure to retain or to produce records of his business which unquestionably the petitioner did maintain for at least a limited period of time, the gradual switching from use of checking accounts to the payment of expenses by cash, the use of an incorrect social security number in a number of instances and the continuous efforts made to confuse and conceal the facts with respect to petitioner's *601 sole proprietorship. Petitioner is a well educated man and his conduct throughout this matter reflects a well calculated preconceived plan to do his best to evade the payment of income tax which petitioner well knew was required to be paid. *10 Willfulness (for tax purposes) is a "voluntary, intentional violation of a known legal duty." United States v. Pomponio,429 U.S. 10, 12 (1976) (per curiam) (quoting U.S. v. Bishop,412 U.S. 346, 360 (1973)). "Willfulness" as used in the context of tax crimes includes those elements necessary to sustain civil fraud. Tomlinson v. Lefkowitz,334 F.2d 262, 265 (5th Cir. 1964), cert. denied 379 U.S. 962 (1965); Amos v. Commissioner,43 T.C. 50, 55 (1964), affd. 360 F.2d 358 (4th Cir. 1965). There can be no question in this case that petitioner voluntarily and intentionally violated his known legal duty to file correct Federal income tax returns, which duty his conduct in prior years well demonstrates that he understood. Petitioner intended to do what he did and he did his best to conceal that conduct. Respondent has sustained his burden of showing *602 that the additions to tax for fraud are correct in this case. Compare Rowlee v. Commissioner,80 T.C. 1111, 1124 (1983), appeal dismissed (2d Cir. April 3, 1984). We come now to the final issue which the Court raises on its own motion, whether or not damages should be awarded under section 6673 for instituting this proceeding primarily for delay. Petitioner's conduct from the filing of the initial petition through the trial and the briefing period has demonstrated that his principal purpose has been to abuse the resources of this Court in every possible way in order to delay the inevitable time of reckoning with respondent. For that reason, we award damages under section 6673 in the amount of $500. We also warn *11 petitioner that we are authorized to impose damages in an amount not in excess of $5,000. [8] Petitioner should bear that fact in mind in connection with any further proceedings which he may institute in this Court. *603 Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. During prior years, petitioner apparently operated two hardware businesses, one of which was at the West King St. location. There is some indication that in 1975 or earlier this business may have been referred to as "Cape Canaveral Hardware #2."↩
3. On the return for the fourth year at issue, petitioner refused to supply his social security number on the ground of "self incrimination."↩
4. Among motions filed by petitioner were two based on the alleged arbitrariness of the statutory notice, the first one a "Motion for Nullification of Notice of Deficiency" and the other a "Motion to Shift Burden of Proof to the Commissioner," which we have treated as a motion to shift the burden of going forward with the evidence to respondent. Although there may be some apparent basis for application of the rule of Helvering v. Taylor,293 U.S. 507↩ (1935), we concluded that both motions should be denied. With respondent's assistance and in spite of petitioner's obstinancy, we succeeded in getting into the record sufficient facts to enable us to make a reasonably accurate determination as to petitioner's net profit from his proprietorship during the years in issue. Thus the issue of the arbitrary nature of the statutory notice is irrelevant. However, we think it appropriate to note that in all cases, including protester audits, respondent should utilize all information in his possession in order to redetermine tax liability in the most accurate fashion which is feasible. It was patently impossible for petitioner to have incurred a zero cost of goods in the operation of a hardware store, as respondent well knew.
5. Expenses as stipulated plus 1/2 of 1 percent of gross receipts. ↩
6. Includes $450 payments made to Frank Aiken for tax years 1977 and 1978.↩
7. By an amended answer filed on October 24, 1983, respondent in the alternative seeks additions to tax under the provisions of section 6651(a)(1) and 6653(a). By reason of our decision on the additions to tax under section 6653(b), we do not reach this alternative contention.↩
8. Section 292 of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 574, increased the amount of damages that may be awarded under section 6673 from $500 to $5,000 for proceedings commenced after December 31, 1982. Section 160 of the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 497, further amended section 6673 to provide for damages up to $5,000 in proceedings pending in this Court after November 5, 1984. In light of the fact that this is petitioner's first appearance in this Court and by reason of the facts discussed in footnote 4 above, we choose to limit the award in this proceeding to $500.↩