PAUL R. STOUT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stout v. Commissioner
Docket No. 19351-82.
United States Tax Court
T.C. Memo 1986-80; 1986 Tax Ct. Memo LEXIS 524; 51 T.C.M. (CCH) 510; T.C.M. (RIA) 86080; March 3, 1986. *524 Held: (1) Deficiencies in income tax for each year 1973 through 1980 sustained. (2) Additions to tax under secs. 6653(b) and 6654, I.R.C. 1954, sustained. (3) Fraud tolled the running of the statute of limitations under sec. 6501(c)(1), I.R.C. 1954. Paul R. Stout, pro se. Robert F. Simon, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following deficiencies *526 in, and additions to, the petitioner's Federal income taxes: Additions to Tax
Sec. 6653(b)
Sec. 6654
Year
Deficiency
I.R.C. 1954 [1]
I.R.C. 1954
1973
$6,323.25
$3,161.63
$133.93
1974
3,631.64
1,815.82
58.55
1975
4,231.40
2,115.70
181.76
1976
7,575.86
3,787.93
240.24
1977
8,348.25
4,174.12
297.05
1978
19,292.91
9,646.45
1979
12,350.49
6,175.25
454.31
1980
1,359.00
679.50
26.58
The issues for decision are: (1) Whether the Commissioner correctly determined the petitioner's income tax deficiencies for each of the years 1973 through 1980; (2) whether the petitioner is liable for additions to tax for fraud under the provisions of section 6653(b) for each of the years 1973 through 1980; (3) whether the petitioner is liable for additions to tax for underpayment of estimated tax pursuant to section 6654 for the years 1973 through 1977, 1979, and 1980; and (4) whether, under the provisions of section 6501, the assessment and collection of the income tax deficiencies for the years 1973 through 1978 is barred by the statute of limitations. *527 FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioner, Paul R. Stout, maintained his legal residence in Lombard, Ill., on the date the petition in this case was filed. During the years 1973 through 1980, the petitioner was married to Florence Stout. In 1939, the petitioner received a bachelor's degree from Miami University (Ohio), with the dual academic honors of Phi Beta Kappa and Cum Laude. He was enrolled as a graduate fellow at Northwestern University in the field of organic chemistry from 1939 through 1942. The petitioner has also taken several courses at the University of Chicago. He was employed by the Quaker Oats Company (Quaker) from 1944 until his retirement in May 1978.From 1978 through 1979, he was employed by Systems Development Corporation (Systems Development). In 1979, by virtue of a corporate divestiture, the petitioner started employment with Applied Information Development, Inc. (Applied Information), and he continued to work there in 1980. The petitioner filed his 1967 and 1968 joint income tax returns in 1969.On each return, he reported receipt of wages from Quaker, interest income, and itemized deductions, *528 including deductions for claimed charitable contributions. On April 15, 1971, he filed joint returns for 1969 and 1970. He received an income tax refund for each of the years 1967 through 1970. The petitioner did not timely file income tax returns for 1971 or 1972. In 1974, he was interviewed by an IRS special agent concerning his failure to file income tax returns for those years. The petitioner admitted that he had not filed the returns and agreed to file them. Shortly after the interview, he filed his 1971 and 1972 returns. On these returns, he claimed charitable deductions for contributions to the Larchmont Foundation totaling over $5,000. At the same time, the petitioner, as president of the foundation, reported that the foundation had received no income or contributions during 1971 and 1972. The petitioner created an alleged church, the Chapel of the Tolerants, in 1972. The church's basic beliefs and structure were developed by him. In addition, he made himself head of the church. In 1976, the petitioner changed its name to the Adena Free Church, Inc. (Adena). He, pursuant to a voluntary vow of poverty, transferred certain of his assets to Adena and occasionally *529 deposited his paycheck in the Adena bank account. The petitioner, at his sole discretion, used funds from the bank account and assets transferred to Adena for the benefit of himself and his family. All of the assets transferred were to revert to him if Adena was not recognized for tax purposes. In 1966, the petitioner submitted a Form W-4, Employee's Withholding Allowance Certificate, which properly listed five exemptions. In 1972, he submitted a Form W-4 on which he claimed 16 exemptions. In 1974, he submitted a Form W-4 on which he falsely claimed 34 exemptions. As a result, no amounts for Federal income tax were withheld from his wages for the years 1975, 1976, and 1977. For 1973, 1974, 1975, and 1976, the petitioner filed no United States income tax returns, or alleged returns, until 1977. In February 1977, he filed tax protestor documents for such years; that is, for each year he filed a Form 1040 containing the name of himself and his wife, but containing no other information. In connection with each form, he attached materials stating: 1. This return is filed under protest. * * * 3. This return is a petition for redress of grievances. * * * 7. We offer to *530 amend or re-file this return so as to be exactly as you wish it, if you will first show us how to do so without waiving our Constitutional rights. 8. We are confused as to the meaning of "dollars", "silver, gold, Constitutional, statutory, fiat, and paper dollars", and the "relative", "actual", "par", or "parity" value thereof. We are also confused as to the meaning of "legal tender", "lawful money", "gross income", "notes receivable", Federal Reserve Notes -- "receivables" and "non-receivables" -- that is to say, "non-redeemable". We are also confused as to the reportability of "bad debts" and we understand that "accounts receivables" are not reportable as "gross income" for a cash basis taxpayer. 9. Asterisks (**) appearing on Pages 1 and 2 of this return signify the following; ** Specific objection is made to this question under the Fifth Amendment, U.S. Constitution, as to Federal Reserve Notes and rights under said Amendment; and similar objection is made to the question under the First, Fourth, Seventh, Eighth, Ninth, Tenth, Thirteenth, Fourteenth, and Sixteenth Amendments. 10. The signatures appearing below are involuntarily given under threat of statutory punishment. *531 In June 1977, the petitioner filed a document which claimed to be an amended return for the years 1969 through 1976 and on which he claimed a refund for all taxes paid during those years. To the alleged amended return, the petitioner attached materials containing the standard objections of the tax protest movement to the income tax system. During 1978, the petitioner filed tax protestor type documents for 1977. Such documents included a Form 1040, on which the petitioner identified himself as "Reverend Paul R. Stout" and claimed 11 exemptions; he reported no income and claimed a refund of taxes withheld; he signed the form and attached a vow of poverty in favor of Adena. On June 29, 1978, the petitioner was adjudged guilty by Jury verdict for violations of section 7203 for willful failure to file income tax returns for 1973, 1974, and 1975 and for violation of section 7205 for willful filing of a false Form W-4 for the year 1974. In September 1978, the petitioner submitted a Form W-4 to Systems Development in which he falsely claimed 16 exemptions. On May 17, 1979, the petitioner filed a return for 1978, on which he again identified himself as "Reverend Paul R. Stout." On *532 such return, he reported his wages from Quaker and Systems Development amounting to $46,913.19, and claimed a deduction of $46,731.94 for alleged contributions to Adena. As a result, the return indicated he had no tax liability, and he claimed a refund for the taxes withheld. In 1979, the petitioner began receiving monthly pension payments from the Quaker employee pension plan, and he continued to receive such payments in 1980. In 1979, the petitioner submitted a Form W-4 to Applied Systems in which he claimed to be exempt from taxation. The petitioner never filed a return for 1979. He and his wife did file a timely joint return for 1980, on which they reported the petitioner's wages from Applied Information but not his pension payments from Quaker. For all of the years at issue, the appropriate Forms W-2, summarizing compensation received and income tax withheld during the year, and Forms W-2P, summarizing pension benefits received and income tax withheld during the year, were sent to the petitioner.Such forms show that the petitioner received the following amounts of wages or pension: Year
Total
1973
$30,342.88
1974
23,841.79
1975
25,741.27
1976
26,951.72
1977
27,876.50
1978
46,913.19
1979
38,295.92
1980
15,683.43
*533 In his notice of deficiency, issued to the petitioner on April 30, 1982, the Commissioner determined that the petitioner was liable for a deficiency for each of the years at issue, that he was liable for the addition to tax under section 6653(b) for fraud for each of such years, and that he was liable for the addition to tax under section 6654 for each of such years except for 1978. In the notice of deficiency, the Commissioner included as unreported income for 1979 only $10,108.96; subsequently, he amended his answer twice and claimed that the unreported income for such year was $36,650.91 and claimed an increased deficiency accordingly. OPINION The first issue for decision is whether the Commissioner correctly determined the petitioner's income tax deficiencies for the years 1973 through 1980. The petitioner bears the burden of proof with regard to deficiencies set forth in the notice of deficiency. Rule 142(a), Tax Court Rules of Practice and Procedure[2]; Welch v. Helvering,290 U.S. 111 (1933). The Commissioner has the burden of proof concerning deficiencies raised subsequent to the notice of deficiency. Rule 142(a); see, e.g., Jasionowski v. Commissioner,66 T.C. 312, 318 (1976). *534 Therefore, the petitioner has the burden of proof with regard to all deficiencies except for the increase in the deficiency for 1979 claimed by the Commissioner in his second amendment to answer. The petitioner has failed to meet his burden. At trial, he introduced no evidence to disprove the Commissioner's determinations. The petitioner was content to present this Court with a series of tax protest contentions which are so patently frivolous that their refutation merits no discussion. See Rowlee v. Commissioner,80 T.C. 1111 (1983). The Commissioner met his burden of proof with regard to the increase in the deficiency in 1979. He proved that the petitioner had received wages of $26,541.95 which had not been reported and which were not included in the notice of deficiency. Therefore, the Commissioner's deficiency determinations are sustained. The second issue for decision is whether the petitioner is liable for the addition to tax for fraud for each of the years 1973 through 1980. Section 6653(b) provides that if any part of any underpayment of tax required to be shown *535 on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. The Commissioner bears the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Levinson v. United States,496 F.2d 651, 654-655 (3d Cir. 1974); Miller v. Commissioner,51 T.C. 915, 918 (1969). The Commissioner has clearly established that the petitioner underpaid his taxes in 1973 through 1980; we must determine whether the underpayments were due to fraud. The Commissioner will carry his burden if he shows that the taxpayer intended to evade taxes which he knew or believed that he owed by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner,394 F.2d 366 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Acker v. Commissioner,26 T.C. 107, 111-112 (1956). The presence of fraud is a factual question to be determined by an examination of the entire record. Mensik v. Commissioner,328 F.2d 147, 150 (7th Cir. 1964), *536 affg. 37 T.C. 703 (1962); Otsuki v. Commissioner,53 T.C. 96, 105 (1969). Evidence of prior and subsequent similar acts reasonably close to the years at issue may be considered. United States v. Johnson,386 F.2d 630, 631 (3d Cir. 1967). The Commissioner has adduced considerable evidence to show the petitioner's fraud. The petitioner is an intelligent and educated man, who, in years prior to those in question, properly completed returns. In addition, the personal interview he had with an IRS special agent in 1974, concerning failure to file returns, could only have increased the petitioner's awareness of the importance of filing a return each year. The petitioner was convicted in 1978 of violating section 7203 for his willful failure to file returns for each of the years 1973, 1974, and 1975, and thus, he is estopped from denying that he willfully failed to file returns for those years. Tomlinson v. Lefkowitz,334 F.2d 262, 266 (5th Cir. 1964); Castillo v. Commissioner,84 T.C. 405 (1985). The tax protestor documents filed by the petitioner for the years 1976 and 1977 and the document he filed *537 purporting to amend his "returns" for 1969 through 1976 contained no information from which his tax liability could be determined and therefore did not constitute returns within the meaning of section 6011 and the regulations thereunder. United States v. Porth,426 F.2d 519 (10th Cir. 1970); Jarvis v. Commissioner,78 T.C. 646 (1982).For 1979, the petitioner did not file a return or any document claiming to be a return. Although his failure to file tax returns is not conclusive proof of fraudulent intent, it may be considered with other facts in determining whether any part of the underpayment of tax is due to fraud. Marsellus v. Commissioner,544 F.2d 883, 885 (5th Cir. 1977), affg. a Memorandum Opinion of this Court; Stoltzfus v. United States,398 F.2d at 1005; Rowlee v. Commissioner,80 T.C. at 1123-1124; Beaver v. Commissioner,55 T.C. 85, 93 (1970). The petitioner did file a valid, though delinquent, return for 1978. However, on it, he claimed a deduction for a contribution to Adena in virtually the same amount as the income reported thereon. This deduction was clearly *538 non-allowable because the earnings of the church inured to the benefit of the petitioner and his family. Sec. 170(c).Given the control that the petitioner retained over the assets transferred to Adena, the benefit he received from Adena expenditures, and the other circumstances of this case, we find that the Adena Free Church was a sham created for the sole purpose of tax avoidance. Stephenson v. Commissioner,79 T.C. 995 (1982), affd. per curiam 748 F.2d 331 (6th Cir. 1984); McGahen v. Commissioner,76 T.C. 468 (1981), affd. without published opinion 720 F.2d 664 (3d Cir. 1983).Moreover, a person as intelligent and well educated as the petitioner knew, or should have known, that he was not entitled to a charitable deduction equal to his income. Sec. 170(b). For 1980, the petitioner and his wife filed a timely tax return, but on it, they failed to report the pension that the petitioner received from Quaker. The omission was substantial, and we are convinced that the omission was deliberate; the petitioner knew that pension payments are taxable income, and he received a Form W-2P reminding him of the amounts of such payments. *539 Other evidence of fraud is the series of false statements made by the petitioner to avoid the withholding of taxes. In 1966, he filed a correct Form W-4. However, in 1974 and 1978, he filed false Forms W-4 for the clear purpose of avoiding withholding taxes. In 1978, he was convicted under section 7205 for having filed such false statements; nevertheless, he filed another false statement 3 months later. In 1979, a year after his conviction, he filed still another false Form W-4. This series of false statements indicates beyond a doubt that the petitioner was pursuing conduct designed to evade his tax liabilities. See Hebrank v. Commissioner,81 T.C. 640, 642 (1983); Rowlee v. Commissioner,80 T.C. at 1125-1126; Habersham-Bey v. Commissioner,78 T.C. 304, 313 (1982). The petitioner claimed large deductions for charitable contributions allegedly made to the Larchmont Foundation in 1971 and 1972. Yet, the petitioner, as its president, stated that the foundation did not receive any income or contributions during such years. Clearly, one of the petitioner's statements was false. We are convinced that this evidence taken as *540 a whole indicates that the petitioner knew of his obligation to file returns and pay taxes and that he attempted to evade his responsibilities during each of the years at issue. The petitioner's fraud is not vitiated because it may have been motivated by a political belief that the law is wrong or by an unreasonable belief that particular tax statutes are unconstitutional. Freedom of expression does not include the right to defraud the Government. See United States v. Moore,627 F.2d 830 (7th Cir. 1980); United States v. Malinowski,472 F.2d 850 (3d Cir. 1973); Rowlee v. Commissioner,80 T.C. at 1125; Habersham-Bey v. Commissioner,78 T.C. at 313-314. We have here a long record of an intelligent and resourceful taxpayer who has used virtually every conceivable device to evade the payment of taxes, and without any doubt or reservation, we sustain the Commissioner's determination of fraud for each of the years at issue. The third issue for decision is whether the petitioner is liable for additions to tax, pursuant to section 6654, for underpayment of estimated tax for the years 1973 through 1977, 1979, and 1980. *541 The imposition of this addition to tax is mandatory, unless the petitioner can bring himself within one of the exceptions of this section. Mitchell v. Commissioner,51 T.C. 641, 648 (1969), revd. 430 F.2d 1 (5th Cir. 1970), revd. 403 U.S. 190 (1971); Estate of Reuben v. Commissioner,33 T.C. 1071, 1072 (1960). Since the petitioner has made no effort to introduce evidence to disprove the Commissioner's determination, we sustain the additions to tax. Sec. 6654(a); Reaver v. Commissioner,42 T.C. 72, 83 (1964). The final issue for decision is whether the assessment and collection of the income tax deficiencies for the years 1973 through 1978 is barred by the statute of limitations. [3] Since the Commissioner has sustained his burden of proving fraud for each such year, the statute of limitations remains open under section 6501(c)(1). Estate of Temple v. Commissioner,67 T.C. 143, 159-160 (1976); Harper v. Commissioner,54 T.C. 1121, 1142 (1973). *542 Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.↩
2. Any reference to a Rule is to the Tax Court Rules of Practice and Procedure.↩
3. The Commissioner describes the issue as relating to 1973 through 1979. However, the notice of deficiency was issued on April 30, 1982, which is within 3 years of the due date for the 1979 return.↩