DAVID F. MOSTELLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mosteller v. Commissioner
Docket No. 15361-81.
United States Tax Court
T.C. Memo 1986-505; 1986 Tax Ct. Memo LEXIS 99; 52 T.C.M. (CCH) 758; T.C.M. (RIA) 86505; October 7, 1986. Gerald T. Zerkin, for the petitioner. John C. McDougal, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: Sec. 6653(b) [1]
Year
Deficiency
Addition
1976
$10,184
$5,092
1977
44,128
22,064
After concessions by both parties, [2] the issues for decision are: (1) Whether petitioner received income from an illegal scheme to manipulate bids on contracts to supply furniture to institutions of the Commonwealth of Virginia that he failed to report on his tax returns for the years 1976 and 1977; (2) Whether petitioner is liable for the additional to tax under section 6653(b) for fraud for the *101 taxable years 1976 and 1977; and (3) Whether the assessment and collection of any tax and addition to tax for the taxable year 1976 is barred by the statute of limiations. *102 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner, David F. Mosteller, resided in Virginia Beach, Virginia, at the time he filed his petition in this case. He timely filed his individual 1976 and 1977 Federal income tax returns (Forms 1040) with the Internal Revenue Service Center in Memphis, Tennessee. Petitioner claimed the filing status of "married filing separately" on each of these returns. At all times pertinent to this case, petitioner was a sales representative for the Inter Royal Corporation, a furniture manufacturer. [3] Inter Royal manufactured steel dormitory furniture that was primarily marketed for use in institutions such as mental health facilities. Petitioner's assigned territory for marketing Inter *103 Royal's products included the Commonwealth of Virginia (hereinafter "the state" or "the Commonwealth"). As a sales representative for Inter Royal, petitioner assisted state personnel in writing furniture specifications for various state mental health facilities. Once the specifications were approved, the state purchasing department issued invitations to bid based on these specifications to various furniture vendors. Inter Royal did not submit bids directly to the state. Rather, petitioner supplied retail vendors with price quotations for Inter Royal products and based on these quotations, plus their own markups for profit, the retail vendors submitted their sealed bids to the state. The state usually awarded the contract on the basis of the lowest price bid. In furnishing price quotations to the various vendors, petitioner padded the quotations by adding costs for fictitious ancillary goods or services such as the installation of the furniture, furniture samples, and the installation of tamper-resistant hardware on the furniture. The costs of these fictitious ancillary goods or services were not part of Inter Royal's price quotations. For example, Inter Royal's price quotations *104 already included the tamper-resistant hardware. Inter Royal apparently was not aware that petitioner was inflating its price quotations with various costs for fictitious ancillary goods or services. The retail vendors computed their bids by applying their own profit markups to the figures quoted by petitioner. Each bid submitted to the Commonwealth showed only the total amount of the bid and the price per unit. The unit price thus included the cost of these fictitious ancillary goods and services and the vendor's markups for profit allocated to each unit. When a state contract was awarded to a vendor that used petitioner's price quotations, petitioner then issued an invoice to the vendor for the fictitious ancillary goods and services included in the bid price. In billing for these goods and services, petitioner ordinarily invoiced the vendor through the Royal Installations Company, a business he operated as a sole proprietorship. However, petitioner occasionally invoiced these vendors in his own name. On at least one occasion, petitioner invoiced a vendor for tamper-resistant hardware through Dadson Enterprises, a company in which he and his wife held an interest. Petitioner *105 was indicted and subsequently convicted in three separate trials in state court on indictments for grand larceny by false pretenses from the Commonwealth of Virginia in violation of Virginia Code section 18.2-178. [4] He was found guilty on eight separate counts of grand larceny. The charges and the three separate trials arose out of the Commonwealth's purchase of furniture for the Southern Virginia Mental Health Institution in Danville (Danville) and two purchases of furniture for the Lynchburg Training School and Hospital in Lynchburg (Lynchburg I and II). Petitioner's convictions arose out of petitioner's manipulation of bids submitted by successful state bidders for furniture supplied to these state institutions. Specifically, petitioner in his quotations to the vendors inflated the manufacturer's prices established *106 by Inter Royal by adding costs for additional tamper-proof hardware that was already included in the manufacturer's prices, for furnishing of samples which were either not required or not actually furnished, or for installation charges for services not performed or not performed as specified in the contract. Petitioner thus quoted to the vendors cost figures that included amounts for fictitious ancillary goods or services purportedly to be supplied by petitioner and for which he billed the vendors. These additional costs resulting from petitioner's misrepresentations to the various vendors inflated the bid that was accepted by the Commonwealth so that petitioner obtained money by false pretenses and with intent to defraud. On appeal, the Virginia Supreme Court sustained five counts but reversed three of the eight counts. Mosteller v. Commonwealth,222 Va. 143, 279 S.E. 2d 380 (1981). The convictions sustained by the Supreme Court included tamper-proof hardware and samples on the Danville contract, samples on the Lynchburg I contract, and samples on the Lynchburg II contracts. The convictions were reversed as to the installation and labor charges on all three *107 projects becuase the Commissionwealth chose to perform its own installation despite the terms of the contracts, and the Supreme Court concluded petitioner did not perpetrate a fraud upon the Commonwealth in that regard. Petitioner was incarcerated and served two years of his nine-year sentences on the various convictions upheld by the Supreme Court. On his 1976 Federal income tax return, petitioner reported wages in the amount of $28,148 from the Inter Royal Corporation. In connection with this employment, petitioner claimed employee business expenses (Form 2106) in the amount of $9,293. On Schedule C attached to his Form 1040, petitioner reported gross receipts of $19,333 and a gross profit of $15,031 from his sole proprietorship, Royal Installations Company. Petitioner claimed business deductions of $16,312 and a net loss in the amount of $1,281. On his 1977 Federal income tax return, petitioner reported wages from the Inter Royal Corporation and the All Orthopedic Appliances Corporation in the amounts of $9,754.96 and $4,000, respectively, and claimed corresponding employee business expenses in the respective amounts of $2,126 and $1,577. On Schedule C attached to his Form *108 1040, petitioner reported gross receipts and a gross profit of $31,135 from his Royal Installations Company. Petitioner claimed business deductions of $27,429 and a net profit in the amount of $3,706. On Schedule E attached to his Form 1040, petitioner reported rental income of $720 and rental expenses of $5,069 resulting in a net loss of $4,349. By statutory notice of deficiency dated April 14, 1981, respondent determined that petitioner had unreported income from his bid-rigging scheme for the taxable years 1976 and 1977 in the amounts of $12,499 and $73,285, [5] respectively. Respondent also disallowed a portion of petitioner's claimed employee business expenses for the taxable years 1976 and 1977 in the amounts of $7,531 and $1,607, respectively, and disallowed petitioner's claimed rental expenses of $5,069 for the taxable year 1977. [6] See n.2, supra. Respondent also determined that all or a part of the resulting underpayment of tax in each year was due to fraud, and therefore determined an addition to the tax under section 6653(b) for each of the years in issue. *109 OPINION In this fraud case, respondent asserts that petitioner failed to report income he received in an illegal bid-rigging scheme. Petitioner, a representative of a furniture manufacturer, manipulated bids that retail vendors submitted to the Commonwealth of Virginia on certain competitively bid purchases of furniture for state institutions. In quoting the manufacturer's purported prices to the vendors, petitioner padded the prices, including costs for certain fictitious goods or services petitioner was to furnish. If the vendor was the successful low bidder, petitioner billed the vendor for those fictitious goods or services and the Commonwealth thus paid inflated prices for the furniture it purchased. Petitioner was indicted, tried, and convicted of eight counts of larceny by false pretenses from the Commonwealth in connection with the bid-rigging scheme. The evidentiary record in this fraud case is skimpy, with respondent relying almost totally upon the published decision by the Virginia Supreme Court upholding five of the eight counts on which petitioner was convicted. [7]Normally *110 petitioner has the burden of showing that respondent's deficiency determinations are incorrect. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Respondent, however, has the burden of establishing by clear and convincing evidence the elements of the section 6653(b) fraud addition. Sec. 7454; Rule 142(b); Stone v. Commissioner,56 T.C. 213, 220 (1971). Where the normal three-year statute of limitations (sec. 6501(a)) has run, then respondent must prove that the taxpayer's returns were false or fraudulent with the intent to evade tax so that the tax may be assessed "at any time" under section 6501(c)(1). The elements of fraud under section 6501(c)(1) for limitations purposes are essentially the same as the elements of fraud under section 6653(b) for the 50 percent civil fraud addition for any "underpayment" of tax "due to fraud." Tomlinson v. Lefkowitz,334 F.2d 262 (5th Cir. 1964), cert. denied 379 U.S. 962 (1965); Estate of Temple v. Commissioner,67 T.C. 143, 159-160 (1976); McGee v. Commissioner,61 T.C. 249, 256-257, 261 (1973), affd. 519 F.2d 1121 (5th Cir. 1975); *111 Amos v. Commissioner,43 T.C. 50, 55 (1964), affd. 360 F.2d 358 (4th Cir. 1965). [8]
*112 1976 Taxable Year
Statute of Limitations
Petitioner timely filed his 1976 individual Federal income tax return on April 15, 1977. The normal three-year period for assessment of deficiencies (section 6501(a)) expired on April 15, 1980. Respondent issued a statutory notice of deficiency for petitioner's 1976 taxable year on April 14, 1981. Absent a showing of fraud, the assessment and collection of tax for the taxable year 1976 is barred by the statute of limitations. [9]
Fraud is a question of fact to be determined on the basis of the entire record. Mensik v. Commissioner,328 F.2d 147, 150 (7th Cir. 1964), cert. denied 389 U.S. 912 (1967), affg. 37 T.C. 703 (1962). Respondent bears the burden of proof and must establish each element of fraud *113 by clear and convincing evidence. Section 7454(a); Rule 142(b). The elements to be shown are (1) an underpayment of tax, and (2) that some part of this underpayment was due to fraud. Hebrank v. Commissioner,81 T.C. 640, 642 (1983). Respondent need not prove the precise amount of underpayment resulting from fraud, but only that there is some underpayment and that some part of the underpayment is attributable to fraud. Plunkett v. Commissioner,465 F.2d 299, 303 (7th Cir. 1972), affg. a Memorandum Opinion of this Court. Respondent must prove fraud in each of the years involved. Drieborg v. Commissioner,225 F.2d 216, 220 (6th Cir. 1955). Where, as in this case, the fraud allegations are inextricably intertwined with and dependent upon the alleged omissions of income, we must be extremely careful not to bootstrap a finding of fraud upon a taxpayer's failure to carry his burden of proof with respect to the deficiency determination. Drieborg v. Commissioner,supra,225 F.2d at 218; Estate of Beck v. Commissioner,56 T.C. 297, 363 (1971); Otsuki v. Commissioner,53 T.C. 96, 106 (1969). *114 Accordingly, where respondent must prove fraud to lift the bar of the statute of limitations, we need not, and indeed should not, address the correctness of the deficiency determination unless and until we find respondent has carried his burden of establishing fraud, i.e., has established by clear and convincing evidence that there was an "underpayment" of tax and that some part of that underpayment was "due to fraud." Sec. 6653(b). Respondent determined that petitioner omitted $12,499 of income received in 1976. Petitioner contends that he properly reported this amount on his 1976 tax return. He argues that the $19,333 reported on Schedule C as gross receipts from his Royal Installations Company includes the $12,499 that respondent alleges he omitted. Respondent has presented no probative evidence, and there is none in the record, that petitioner failed to report income in 1976 from the bid-rigging scheme, resulting in an underpayment of tax. [10] On his Schedule C, petitioner reported gross receipts of $19,333. In arguing that this amount did not include the $12,499 he says was omitted from income, respondent relies upon nothing more than suspicion, surmise, and speculation. *115 Respondent argues that it is clear petitioner understated his income from his bidrigging scheme in 1977 and therefore it is reasonable to infer that petitioner understated his income from that scheme in 1976. Such an inference would be improper, and respondent's arguments represent bootstrapping at its worst. Respondent structures his arguments by discussing first the deficiency, then the fraud, and lastly the statute of limitations. [11] Respondent admits on brief that it is by "no means *116 obvious" that the bid-rigging income was omitted from the 1976 return but goes on to state that "The petitioner, who has the burden of proof on this issue, has produced no books or records to establish the makeup of the $19,330.00 of gross receipts reported on the return * * *." But the burden is not upon petitioner, at least not until respondent has first proved by clear and convincing evidence an underpayment of tax some part of which is due to fraud. Respondent seems then to acknowledge his burden and goes on to assert: For that reason, although this discussion might as well be placed in the fraud argument, respondent will address at this point the affirmative evidence which compels a conclusion that petitioner did not report the $12,499.00 of bid-rigging income on his return for 1976. The principal proof for the conclusion that the bid-rigging income was unreported in 1976 is inferential; that is, it is clear that petitioner did not report the income from his scheme on his 1977 return, and it is a reasonable inference that petitioner also failed to report income from the identical source in 1976. More than that, respondent submits that it would be unreasonable to conclude *117 on the evidence before the Court that petitioner behaved inconsistently in his treatment of the same income in two different years. This is neither affirmative evidence nor a proper inference to be drawn. Respondent next discusses an item of evidence from the state criminal trial. However, there is nothing in the exhibits from the criminal trial or in the published decision of the Virginia Supreme Court that remotely relates to whether any particular item of income from the bid-rigging scheme was or was not included in petitioner's Schedule C gross receipts. *118 In his subsequent discussion of the fraud issue, respondent comes full circle, relying upon "petitioner's omission of sustantial income from his bid-rigging scheme from his returns for two consecutive years" and the illegal character of the purportedly omitted income as factors establishing fraud. This highlights the circularity of respondent's arguments and his improper bootstrapping attempt in this case. There is simply no evidence in the record that petitioner omitted income from the bid-rigging scheme from his 1976 return. [12] Respondent has failed to carry his burden of proof. Accordingly, since respondent failed to prove fraud for 1976, the assessment and collection of any tax or addition for that year is barred by the statute of limitations. *119 1977 Taxable Year
Here the normal split burden of proof applies: petitioner must prove by a preponderance of the evidence any errors in the deficiency determination and respondent must establish by clear and convincing evidence the elements of fraud. Zack v. Commissioner,692 F.2d 28 (6th Cir. 1982), affg. a Memorandum Opinion of this Court, cert. denied 460 U.S. 1084 (1983). Nonetheless, since the fraud allegations are so intertwined with and dependent upon the alleged omissions of income in 1977, we must take care not to bootstrap a finding of fraud upon petitioner's failure to carry his burden of proof in regard to the deficiency.For that reason we will address the fraud issue next. Fraud
The fraud envisioned by section 6653(b) is actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing. Candela v. United States,635 F.2d 1272 (7th Cir. 1980); Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); *120 Mitchell v. Commissioner,118 F.2d 308 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939), followed on remand 45 B.T.A. 822 (1941); Wilson v. Commissioner,76 T.C. 623, 634 (1981), Supplemental Opinion 77 T.C. 324 (1981). Respondent must show that the taxpayer intended to evade taxes by conduct calculated to conceal, mislead, or otherwise prevent the collection of such taxes. Webb v. Commissioner,394 F.2d 366, 377 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Acker v. Commissioner,26 T.C. 107, 112-113 (1956). Fraud is a question of fact to be determined on the basis of the entire record. Mensik v. Commissioner,supra;Gajewski v. Commissioner,67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); Otsuki v. Commissioner,supra,53 T.C. at 105-106. Fraud can seldom be established by direct proof of the taxpayer's intention; therefore, the taxpayer's entire course of conduct must be considered, and fraudulent intent can be established by circumstantial *121 evidence. Spies v. United States,317 U.S. 492 (1943); Gajewski v. Commissioner,supra,67 T.C. at 200; Otsuki v. Commissioner,supra,53 T.C. at 105-106. Specifically, we must consider the taxpayer's conduct and other circumstances surrounding the preparation, signing, and filing of the alleged fraudulent return. Foster v. Commissioner,391 F.2d 727, 733 (4th Cir. 1968). See also Wilson v. Commissioner,supra,76 T.C. at 634. Fraud is never imputed or presumed and courts should not sustain findings of fraud upon circumstances which at most create only suspicion. Olinger v. Commissioner,234 F.2d 823, 824 (5th Cir. 1956); Davis v. Commissioner,184 F.2d 86, 87 (10th Cir. 1950); Green v. Commissioner,66 T.C. 538, 550 (1976). Mere suspicion does not prove fraud, and the fact that we do not find the taxpayer's testimony wholly credible is not sufficient to establish fraud. Cirillo v. Commissioner,314 F.2d 478, 482 (3d Cir. 1963), affg. in part and revg. in part a Memorandum Opinion of this Court; Shaw v. Commissioner,27 T.C. 561, 569-570 (1956), *122 affd. 252 F.2d 681 (6th Cir. 1958); see also DeClercq v. Commissioner,T.C. Memo. 1982-386. The existence of an underpayment is an element of fraud that respondent must establish. See Hebrank v. Commissioner,supra,81 T.C. at 642; Stone v. Commissioner,supra,56 T.C. at 220. Although respondent need not prove the precise amount of the underpayment of tax, nonetheless, he still must prove that the taxpayer has, to some extent, underpaid his taxes and that such underpayment is due to fraud. Otsuki v. Commissioner,supra,53 T.C. at 106. Respondent determined that petitioner received income in 1977 in the amount of $48,125 that he failed to report. See n.5, supra. The amount of unreported income is based largely on petitioner's conviction of grand larceny by false pretenses under Virginia Code section 18.2-178 and various items discussed by the Virginia Supreme Court in upholding five of the eight counts on which petitioner was convicted. The various amounts that respondent now claims were omitted from petitioner's 1977 tax return are as follows: Job
Vendor
Item
Amount
Danville
Ginns Southern
Samples
$ 6,113
Ginns Southern
Installation
5,012
Ginns Southern
Tamper-proof hardware
5,000
Lynchburg II
Trend Contract Furnishings
Labor *
25,000
Ginns Southern
Set-up labor
7,000
Total
$48,125
*123 On appeal, the Supreme Court of Virginia reversed petitioner's convictions with respect to the $5,012 and $7,000 from Ginns Southern and the $25,000 from Trend Contract Furnishings, those being various labor or installation charges. Petitioner's convictions on the various counts of larceny by false pretenses collaterally estop him from disputing in this proceeding all essential elements of that criminal offense that also pertain to any disputed issues in this proceeding. Tomlinson v. Lefkowitz,supra,334 F.2d at 264; Arctic Ice Cream Co. v. Commissioner,43 T.C. 68, 75 (1964); Amos v. Commissioner,supra,43 T.C. at 55. [13] See generally Commissioner v. Sunnen,333 U.S. 591 (1948); Estate of Best v. Commissioner,76 T.C. 122, 133-141 (1981). Virginia Code section 18.2-178 (1982) provides in pertinent part that: If any person obtain, by any false pretense * * * from any person, with intent to defraud, money * * * he shall be deemed guilty of larceny thereof * * *124 *. The Virginia Supreme Court having sustained petitioner's convictions on five counts of larceny by false pretenses in his bid-rigging scheme, we are bound by that determination as to the essential elements of the crime. Cf. Commissioner v. Estate of Bosch,387 U.S. 456 (1967). Those elements would appear to be (1) obtaining money from any person (2) by any false pretense, and (3) with intent to defraud. What the Virginia Supreme Court resolved in petitioner's case was that the person defrauded, the victim of the fraudulent scheme (the Commonwealth), need not be the person to whom the misrepresentations were made (the retail vendors). Mosteller v. Commonwealth,222 Va. 143, 147-148, 279 S.E. 2d 380, 382 (1981). Thus, while petitioner is estopped to deny that he made misrepresentations to the vendors with the intent to defraud the Commonwealth and thereby obtained money in his bid-rigging scheme, that has little to do with the elements of a civil tax fraud case -- an "underpayment" of tax "due to fraud." Both parties have relied extensively and to a disturbing *125 extent upon statements in the published decision by the Virginia Supreme Court for the facts in this case, there being little else in our record. See n.7, supra. Mere evidentiary facts in the criminal case, as opposed to ultimate facts, would not be established in this case under the principles of collateral estoppel by judgment. However, accepting every statement in the Virginia Supreme Court decision as a fact in this case, even as to those counts that were reversed and could not be the subject of collateral estoppel, we cannot find any evidence that the various items of income were omitted from petitioner's 1977 tax return. Again, petitioner reported on his Schedule C gross receipts from his Royal Installations Company in the amount of $31,135. To try to show that petitioner failed to report an additional amount of $48,125, some of the items discussed by the Virginia Supreme Court and listed above, respondent merely points to certain documents that show petitioner received some of those amounts. Respondent seems to think that if he can show petitioner received some of these items, that suffices to prove it is in addition to the $31,135. [14] We do not agree. There is no *126 evidence as to what items of income comprise the $31,135, and only if respondent could establish by clear and convincing evidence that petitioner received the entire $48,125 (or at least some amount exceeding $31,135) could we find omitted income for purposes of the fraud addition. This respondent has not done. *127 Petitioner admits receiving an amount of $25,000 in 1977 from Trend Contract Furnishings (his wife's firm) and admits he did not report this amount as income on his 1977 Federal income tax return, claiming it was part of a nontaxable property settlement between him and his wife. There was a property settlement between the spouses that year, and petitioner apparently received some amount relating to Trend in that division of marital assets. The record contains copies of two invoices issued in 1977 by the Royal Installations Company to Trend Contract Furnishings. The first invoice, dated March 31, 1977, shows an amount due of $41,000 for "installation labor for wardrobe set-up and abandoned samples for Lynchburg wardrobe job." The second invoice, dated December 15, 1977, requests Trend Contract Furnishings to remit the $16,000 balance due on the Lynchburg main wardrobe order before the end of the month. Respondent argues that a reasonable inference can be drawn that sometime between March 31, 1977 and December 15, 1977, petitioner received a $25,000 payment from Trend Contract Furnishings on the invoice dated March 31, 1977. We do not agree. Petitioner testified that these two *128 invoices were completely unrelated, and that the $25,000 he received from Trend Contract Furnishings was part of the property settlement between him and his wife and that he considered it nontaxable. While respondent attacks petitioner's credibility at every step, there is little in the record except respondent's surmise, suspicion, and speculation. [15] Mere suspicion or even the fact that we do not find petitioner's testimony wholly credible is not sufficient to establish fraud. Cirillo v. Commissioner,supra.Respondent has not established by clear and convincing evidence that petitioner omitted $25,000 of taxable income. Respondent has failed to prove by clear and convincing evidence underpayment of tax or at least any underpayment due to fraud. [16]
*129 However, even if respondent had established an underpayment of tax, he has not established by clear and convincing evidence that any such underpayment was due to petitioner's fraud. Fraud cannot be inferred from a mere understatement of income. Holland v. United States,348 U.S. 121, 137 (1954). Although petitioner was convicted on five counts of larceny by false pretenses, that does not prove petitioner's fraudulent intent to evade taxes. Respondent asks us to infer such an intent to evade tax, citing McGee v. Commissioner,supra, where we said (61 T.C. at 260): it is a fair inference that a man who will misappropriate another's funds to his own use through misrepresentation and concealment will not hesitate to misrepresent and conceal his receipt of those same funds from the Government with intent to evade tax. * * * Here there is no evidence of concealment of any receipt of funds, as will be discussed below.Moreover, while an inference of fraudulent intent may be a factor to consider, along with the totality of facts and circumstances of the particular case, such an inference, standing alone, cannot constitute clear *130 and convincing evidence of an intent to evade tax. In view of the peculiar facts in regard to petitioner's bid-rigging scheme and some uncertainty in the state law until the Virginia Supreme Court had ruled on petitioner's case, we think any inference would be improper here. From the fact that petitioner intended to defraud the Commonwealth of Virginia by inflating the prices it paid on competitively bid purchases of institutional furniture, we are unwilling in this case to infer an intent to evade Federal income tax. [17]
*131 The evidence in the record not persuade us that petitioner either operated the Royal Installations Company in a clandestine manner or attempted in any way to conceal income from such business. Petitioner issued invoices to the various vendors, received payments by check, and reported the income on his tax returns.These activities do not suggest that petitioner was attempting to conceal anything in regard to his Federal taxes. Although petitioner did not produce any books or records at trial regarding the Royal Installations Company, their disappearance during his incarceration was adequately explained, at least to the extent that no adverse inference should be drawn to support respondent's fraud allegations. After reviewing the entire record, we conclude that respondent has failed to prove by clear and convincing evidence that any underpayment of tax in 1977 was due to fraud. Accordingly, the fraud addition is not sustained for 1977. Deficiency for 1977
We have not, however, concluded our inquiry. There still remains the matter of the correctness of respondent's deficiency determination as to which petitioner has the burden of proof. Welch v. Helvering,supra; *132 Rule 142(a).That respondent failed to carry his heavier burden of proving the elements of fraud by clear and convincing evidence does not relieve petitioner of his lighter burden. In this case we think both parties failed to sustain their burdens of proof. Petitioner argues that he has proven the notice of deficiency to be erroneous and thus the presumption of correctness has been destroyed. Apparently, petitioner is referring to the concessions made with respect to the amount of the deficiency. However, mere inaccuracy of the deficiency determination in some respects does not affect the presumption with respect to the entire deficiency. Foster v. Commissioner,supra,391 F.2d at 735. Petitioner admitted at trial that he received $25,000 from Trend Contract Furnishings in 1977. He also admitted that he received $4,000 (of the alleged $5,000) from Ginns Southern by way of Dadson Enterprises. Petitioner claims these amounts represented proceeds from property settlement with his wife and thus were nontaxable and not includable on his 1977 Federal income tax return.Except for petitioner's self-serving and uncorroborated testimony, there is no probative *133 evidence indicating that such proceeds were received as part of a nontaxable settlement.[18] We did not wholly reject this testimony in considering respondent's fraud allegations, and we declined to let mere suspicion and the fact that we did not find petitioner's testimony to be wholly credible carry respondent's heavy burden of proving fraud by clear and convincing evidence. Nonetheless, in ruling on the deficiency issue, we need not accept petitioner's self-serving testimony, even if it is uncontradicted, if the Court finds the testimony unreasonable, improbable, or questionable. Lovell and Hart, Inc. v. Commissioner,456 F.2d 145, 148 (6th Cir. 1972); Ruark v. Commissioner,449 F.2d 311, 312 (9th Cir. 1971). Accordingly, we find that petitioner has failed to prove the amount of $29,000 he admits receiving represents anything other than taxable income. *134 As for the $6,113, the $5,012, and the $7,000 from Ginns Southern, petitioner has offered no evidence rebutting respondent's determination. At trial, petitioner neither specifically denied nor admitted receiving these amounts in 1977, but simply testified he gave his accountant all his receipts to prepare his tax return. On brief, petitioner essentially maintains that the gross receipts in the amount of $31,175 reported on Schedule C of his 1977 tax return are more than sufficient to include these sums. While respondent did not prove by clear and convincing evidence that the $31,175 did not include these amounts, petitioner has also failed to establish by even a preponderance of the evidence that the $31,175 did include them. Without some corroborating evidence, which should have been available to petitioner, we simply do not accept petitioner's testimony. Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Accordingly, petitioner has failed to persuade us of any error in the amount of $48,125 of unreported income respondent determined. [19] Thus petitioner has not carried his burden of proof *135 as to the deficiency determination. To reflect the concessions and our holdings, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in question, and all "Rule" references are to the Tax Court Rules of Practice and Procedure.↩
2. On brief, respondent conceded that the exchange of property interests in two houses between petitioner and his wife in 1977 constituted a nontaxable division of marital property resulting in no gain to petitioner. Respondent also conceded that petitioner did not understate his income for the taxable year 1976 in an amount in excess of 25 percent of the amount of gross income stated in the return for such year. At trial, petitioner conceded that (1) the information contained in and supporting the notice of deficiency was not illegally obtained in violation of equal protection and due process; (2) the income tax is not in violation of the Constitution of the United States; and (3) the examination process and procedures do not violate due process, equal protection, and the right against self-incrimination. The statutory notice of deficiency also disallowed portions of petitioner's employee business expenses each year and his rental expenses for 1977. There is no evidence in the record as to these items, and petitioner does not discuss them on brief. Therefore, we deem that petitioner has conceded these items or at least has failed to carry his burden of proof. Rule 142(a). These items are unrelated to the fraud issues as to which respondent bears the burden of proof.↩
3. We note that petitioner also reported wages in the amount of $4,000 from the All Orthopedic Appliances Corporation on his 1977 Federal income tax return in addition to the wages he earned from the Inter Royal Corporation. However, the time period that petitioner worked for either of these companies in 1977 is unclear.↩
4. Virginia Code section 18.2-178 provides in pertinent part: If any person obtain, by any false pretense or token, from any person, with intent to defraud, money or other property which may be the subject of larceny, he shall be deemed guilty of larceny thereof * * *.↩
5. Respondent conceded at trial and on brief that the amount of unreported income for the taxable year 1977 should be reduced to $48,125 because some of the alleged unreported income from the bid-rigging scheme had been received in years other than those involved in this case. ↩
6. Respondent's adjustments to petitioner's medical expenses and sales tax deductions for each of the years in issue are automatic adjustments dependent on petitioner's correct adjusted gross income in each year.↩
7. In addition to a copy of that published decision by the Virginia Supreme Court (Ex. D), the record consists of a brief stipulation and certain other stipulated exhibits -- the tax returns, the statutory notice of deficiency, three exhibits from the state criminal trial (Exs. E, F, and G), and certain other documents offered only to show the basis of respondent's determination of unreported income but not as evidence of the truth of any matter asserted therein (Exs. H, I, J, K, and L). Respondent of course had the burden of proof on the fraud issues, and one of the two years was open for assessment and collection of tax only if respondent proved fraud. Respondent's case-in-chief consisted of counsel's discussion of Exs. D, E, F, and G, together with his invitation to the Court to examine exhibits I, J, K, and L (those not admitted as proof of the facts contained therein) and "if either the Court or the petitioner has further questions, I have the revenue agent available." Having received the stipulation and the stipulated exhibits for the first time a few minutes earlier, without an opportunity to read them, the Court declined this invitation and reminded counsel of his burden of proof and his responsibility to determine how he would present his case to the Court. Respondent's counsel briefly discussed the exhibits, did not call the revenue agent or any other witnesses to testify, and rested his case. Petitioner's counsel then called petitioner for brief testimony and to identify two documents that were received in evidence. The transcript of this fraud trial comprised 47 pages, considerably fewer than the post-trial briefs. Unfortunately, argument on brief is not a substitute for evidence in the record.↩
8. See also Phillips v. Commissioner,T.C. Memo. 1984-133; Rinehart v. Commissioner,T.C. Memo. 1983-184↩.
9. Respondent conceded that petitioner did not understate his income in this year in an amount in excess of 25 percent of the amount of gross income stated in the return for such year. Thus, the six-year period for assessment pursuant to section 6501(e)↩ is not available to respondent.
10. There is some underpayment of tax in a small amount resulting from the disallowed employee business expense for that year as to which petitioner failed to carry his burden of proof. See n.2, supra.↩ However, for purposes of meeting his burden to establish an underpayment of tax by clear and convincing evidence, respondent cannot rely upon petitioner's failure to carry his burden as to the deficiency determination. Moreover, respondent has never suggested that any underpayment of tax resulting from disallowed employee business expense was due to fraud. Finally, there is no evidence whatsoever, let alone any clear and convincing evidence, that any such underpayment was due to fraud.
11. Our criticism does not go to the use of this format, as such, because many fraud opinions of this Court are structured in just that format. But both counsel and the Court must use that format with care to avoid bootstrapping a finding of fraud upon the taxpayer's failure to show error in the deficiency determination. That is particularly true where respondent must first prove fraud in order to lift the bar of the statute of limitations, as is the case here for 1976. Unless respondent proves fraud, we do not reach the issue as to the correctness of the deficiency determination and petitioner's burden of proof in regard thereto.↩
12. The documents admitted by stipulation for the limited purpose of showing the basis for respondent's determination of unreported income (Exs. H, I, J, K, and L) purport to show the $12,499 as an amount in addition to the $19,333 reported on the 1976 return. However, those documents were not offered or received as evidence of any matters asserted therein. The revenue agent did not testify, so we can assume his testimony, if he had been called, would not have provided any independent factual support to show that the $12,499 was an amount of income in addition to the $19,333 reported by petitioner. Cf. Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158 (1946), affd. 162 F.2d 513↩ (10th Cir. 1947).
*. The Virginia Supreme Court could not determine if any part of the $25,000 was for samples as opposed to labor.↩
13. See also Piazza v. Commissioner,T.C. Memo. 1985-222↩.
14. Respondent constructs his argument upon what he treats as an admission by petitioner. In the statutory notice of deficiency, respondent determined unreported income of $73,285, later reduced to $48,125. See n.5, supra.↩ In the petition to this Court, prepared by his accountant who was then representing petitioner, there was an allegation that "The $73,285 for 1977 was not received by the petitioner and therefore not reportable by him," an allegation denied by respondent in his answer. On brief respondent tries to treat this allegation as an admission by petitioner that he did not report any of the $73,285 (or $48,125) on his 1977 return. On the basis of this purported admission, respondent then argues that if he can show that any of the items making up the $48,125 were received by petitioner, then petitioner has already admitted he did not report it on his return. We do not view the statement in the petition as an admission. In his answer, respondent pleaded in paragraph 6(d) that payments "were made to petitioner or for his benefit in the total amounts of $12,499.00 in 1976 and $73,285.00 in 1977, which amounts of taxable income were omitted by petitioner from his income tax returns for those years." Petitioner's Reply to Answer denied those allegations. So much for petitioner's purported admission. Moreover, this type of inference heaped on surmise falls far short of clear and convincing evidence.
15. The Court is rather inclined to agree with petitioner's assessment that "respondent has attempted to prove his case by painting petitioner as a scoundrel and by assuming the worst of motives at every opportunity." ↩
16. Again there are underpayments of tax attributable to the disallowed employee business expenses and rental expenses, but those items are unrelated to the fraud allegations. See nn.2, 10, supra.↩ Also there is still the separate matter as to whether petitioner has established error in the deficiency determinations. All we are determining at this point is that respondent has failed to establish by clear and convincing evidence any underpayment of tax in regard to the alleged unreported income from the bid-rigging scheme.
17. We must of course accept the determination of the Virginia Supreme Court that petitioner had the requisite criminal intent to defraud the Commonwealth. Were this an open issue, we might find petitioner's contrary argument persuasive. As summarized by the Virginia Supreme Court ( Mosteller v. Commonwealth,222 Va. 143, 147, 279 S.E. 2d 380, 381 (1981)), petitioner argued as follows: Mosteller argues that, even if the evidence was sufficient to show that he did everything the Commonwealth says he did, his actions would not constitute a violation of Code § 18.2-178. As the Commonwealth received the furniture at the contract price, it got precisely what it freely and voluntarily bargained for. If it accepted in each instance what subsequent analysis revealed to be an inflated bid, the Commonwealth may have been the victim of poor judgment or inferior negotiating skill on the part of its employees, but Mosteller committed no crime in his persuasive salesmanship. Furthermore, Mosteller contends that since he was not in privity with the Commonwealth, he could not properly be convicted for any fraudulent misrepresentations that he may have made to a vendor. Moreover, he acknowledges that his actions may constitute "bid-rigging" under present Code § 59.1-68.7, not in effect at the time of these acts, but says that such manipulating of bids cannot be the basis for the larceny convictions. While the Virginia Supreme Court rejected petitioner's contentions, petitioner at the time he was engaged in manipulating the vendors' bids and at the time he was filing his tax returns may well have believed that he was merely being a good salesman engaging in a sharp business practice rather than a criminal activity. With the change in state law by enactment of a specific bid-rigging prohibition and with the clarification of the larceny by false pretenses code provision by the Supreme Court's decision in petitioner's own case, we think the legal claimate has changed from that existing in 1977 so that we should not draw any inference of intent to evade tax, as respondent urges. Similarly, the Virginia Supreme Court having spoken on the matter, we cannot redetermine the propriety of petitioner's convictioins under state law, as petitioner asks us to do.↩
18. Petitioner offered and the Court received into evidence two handwritten documents representing the proposed property settlement between him and his wife. One of these documents is a yellow legal size piece of paper dated March 6, 1977, described as a breakdown of significant assets. The other document is from petitioner's memo pad, which he claims represents a casual discussion between him and his wife regarding property distribution. The division of property listed on the legal sized paper he claims represents the actual agreement between him and his wife. Petitioner allegedly received these documents a few days before trial from his mother, who found them in petitioner's divorce decree. Petitioner's mother did not testify at trial, nor did his ex-wife. We do not believe the final division of marital property was accomplished by these informal, handwritten notes.↩
19. Petitioner presented no evidence or argument regarding the disallowed employee business expenses or the disallowed rental expenses. See n.2, supra.↩